John Douglas SHERIDAN *v.* STATE of Arkansas

CR 06-695 247 S.W.3d 481

Supreme Court of Arkansas
Opinion delivered January 18, 2007

---

*Doug Norwood*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Lindsey K. Bell*, Ass't Att'y Gen., for appellee.

PAUL E. DANIELSON, Justice. Appellant, John Douglas Sheridan, conditionally appeals from the circuit court's final judgment finding him guilty of driving while intoxicated (DWI) and sentencing him to court costs of $300, a fine of $300, ten days in jail with nine days suspended for one year, completion of an alcohol-safety program, and a $5 per month collection fee. His sole point on

appeal is that the circuit court erred in denying his motion to suppress. We affirm the denial of his suppression motion and affirm appellant's conviction and sentence.

A review of the record reveals the following facts. On May 22, 2004, Patrol Commander Lieutenant Jesus "Jessie" Martinez of the Little Flock Police Department was the commanding officer at a safety checkpoint in Little Flock. The checkpoint was located on Woods Lane, north of Highway 102, almost in front of the community college. The specific location was chosen, according to Lieutenant Martinez, due to the high number of traffic-related incidents on that road and due to the presence of several children in a nearby apartment complex.

According to Lieutenant Martinez, the checkpoint did not cause any traffic jams, despite the fact that each and every car was stopped. After stopping each vehicle, an officer made contact with the driver, identified himself or herself, advised the driver that the officers were performing a safety checkpoint, asked to examine the driver's license, ensured that all passengers were wearing seatbelts, ensured that any children were properly restrained in an appropriate car seat, and verified the possession of the driver's license. Lieutenant Martinez testified that the average stop lasted fifteen to twenty seconds, that squad cars were in the area with their lights on, and that the officers were dressed in their uniforms. He further testified that he was present the entire time and that he was commissioned by the Benton County Sheriff's Office and was a commissioned officer for the city of Little Flock.

During the course of the checkpoint, appellant was stopped and cited for DWI. He was subsequently convicted by the district court on September 15, 2004, and sentenced to a $300 fine, $300 in costs, two days of public service, and completion of a drug and alcohol screening. On October 15, 2004, appellant filed his notice of appeal to the circuit court.

On August 30, 2005, appellant filed a motion to suppress and brief-in-support, in which he asserted that the roadblock orchestrated by the Little Flock police was an illegal detention under *Brouhard v. Lee*, 125 F.3d 656 (8th Cir. 1997), as no elected official had approved the roadblock in advance. On October 18, 2005, the circuit court entered its order denying appellant's motion to suppress, granting appellant's motion to reconsider that decision, and setting a hearing for appellant's motion to reconsider. Following briefing by both parties, the circuit court denied appellant's

motion for reconsideration at a hearing held on March 1, 2006.[1] On March 17, 2006, the circuit court entered its final judgment, in which it stated that appellant had entered into a plea agreement pursuant to Ark. R. Crim. P. 24.3(b). It further found appellant guilty of DWI and sentenced him as already set forth. Appellant then filed his notice of appeal on March 28, 2006, and we now consider his appeal.

For his sole point on appeal, appellant argues that pursuant to the Eighth Circuit Court of Appeals's decision in *Brouhard v. Lee, supra,* permission from an elected official must be received before establishing a roadblock. He asserts that because Lieutenant Martinez failed to get such permission, the instant roadblock was illegal from its inception under the Fourth Amendment and all evidence discovered was illegally gathered.[2] For that reason, he claims, he should be able to withdraw his guilty plea entered pursuant to Rule 24.3(b).

The State responds that federal cases are neither binding nor persuasive authority on this court when the federal case relied upon is factually dissimilar to the case in issue. The State notes appellant's failure to cite a case that it believes to be on point, *Mullinax v. State,* 327 Ark. 41, 938 S.W.2d 801 (1997), and avers that in that case there was no specific authorization by an elected official. It further contends that under the balancing test set forth by the United States Supreme Court in *Brown v. Texas,* 443 U.S. 47 (1979), and recognized by this court in *Mullinax, supra,* the roadblock in the instant case was reasonable under the Fourth Amendment because (1) there is no doubt as to the magnitude of the State's interest in eradicating drunk driving; (2) the level of the intrusion on the individual motorist was slight; and (3) the degree to which the roadblock advanced the State's interest was sufficient. The State concludes that under *Mullinax, supra,* the requirement of approval by an elected official is not a prerequisite to a constitutional roadblock and, thus, the denial of appellant's suppression motion should be affirmed.

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based upon the totality of the

---

[1] That decision was memorialized in an order filed March 22, 2006.

[2] While appellant also moved to suppress the State's evidence under Article 2, § 15 of the Arkansas Constitution before the circuit court, he does not pursue that argument on appeal.

circumstances, reversing only if the circuit court's ruling denying the motion to suppress is clearly against the preponderance of the evidence. *See Hart v. State*, 368 Ark. 237, 244 S.W.3d 670 (2006).

A Fourth Amendment seizure occurs when a vehicle is stopped at a roadblock or checkpoint. *See Michigan Dep't of State Police v. Sitz*, 496 U.S. 444 (1990); *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976); *Mullinax v. State*, 327 Ark. 41, 938 S.W.2d 801 (1997). The question then becomes whether such a seizure is reasonable under the Fourth Amendment. *See Sitz, supra.* Where a vehicle stop is made on less than reasonable suspicion of criminal activity, its permissibility is determined by a three-pronged balancing test. *See Mullinax, supra.* That test, as enunciated by the United States Supreme Court in *Brown v. Texas, supra*, requires consideration of the following three factors: (1) a weighing of the gravity of the public concerns served by the seizure; (2) the degree to which the seizure advances the public interest; and (3) the severity of the interference with individual liberty.

Here, appellant does not challenge the State's interest in preventing accidents caused by drunk drivers, the degree to which the Little Flock roadblock advanced that interest, nor the level of intrusion on his privacy rights that the roadblock may have caused. Instead, appellant asserts that an elected public official or authority must authorize a roadblock before its implementation in order for that roadblock to be legal, relying on the following passage from the Eighth Circuit Court of Appeals's decision in *Brouhard v. Lee, supra*:

> The Motorists further argue that the lack of specific state-granted authority, empirically determined checkpoint placements, and advance publication of checkpoint locations, renders the checkpoints unreasonable. We disagree.
>
> Although the *Sitz* checkpoints were authorized by state legislation, that fact was not determinative. While *Sitz* requires authorization by an elected public authority, it nowhere holds that the public authority must be the state legislature. The Benton County program was authorized by the county's elected sheriff. His election by the citizens of the county fully satisfies the *Sitz* requirement of a grant of public authority. These checkpoints, with sites selected on the basis of historical arrest and traffic-related experience, chosen after consultation with the Sheriff, and where all motorists were momentarily detained, were reasonable and in accord with the Fourth Amendment.

125 F.3d at 660. We disagree.

■ First, while this court often looks to federal court decisions, they are not precedent and are not binding on this court. *See, e.g., Crenshaw v. Eudora Sch. Dist.*, 362 Ark. 288, 208 S.W.3d 206 (2005); *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004), *overruled on other grounds by Low v. Insurance Co. of North Am.*, 364 Ark. 427, 220 S.W.3d 670 (2005). Second, our review of the *Sitz* decision does not reveal any pronounced requirement for authorization by an elected public authority, contrary to the Eighth Circuit's decision in *Brouhard*.

We rejected a similar argument made in *Mullinax, supra.* There, Mullinax argued that the Fourth Amendment required a statewide administrative or statutory plan for implementing road-blocks, relying on the Texas Court of Criminal Appeals's decision in *Holt v. State*, 887 S.W.2d 16 (Tex. Crim. App. 1994). This court rejected the argument and found the *Holt* decision to be unpersuasive. The court said: "Although *Sitz* did involve a comprehensive statewide program with guidelines for implementing sobriety checkpoints, we do not interpret the *Sitz* decision as holding that a statewide program is a prerequisite to instituting a constitutional roadblock." 327 Ark. at 48, 938 S.W.2d at 805.

Nor do we interpret the *Sitz* decision as holding that an elected public authority *must* authorize a checkpoint in order for it to be legal. In *Sitz*, the Michigan Department of State Police and its director established a sobriety checkpoint pilot program. The director then appointed a Sobriety Checkpoint Advisory Committee that was composed of representatives of the state police force, local police forces, state prosecutors, and the University of Michigan Transportation Research Institute. The advisory committee in turn created guidelines setting forth procedures governing check-point operations, site selection, and publicity.

The challenged checkpoint in *Sitz* was conducted in Saginaw County, Michigan, with the assistance of the Saginaw County Sheriff's Department. In reviewing the procedures used, the Supreme Court observed:

> The actual language from *Brown v. Texas*, upon which the Michigan courts based their evaluation of "effectiveness," describes the balancing factor as "the degree to which the seizure advances the public interest." 443 U.S. at 51. This passage from *Brown* was not meant to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public

516 U.S. at 453-54

danger. Experts in police science might disagree over which of several methods of apprehending drunken drivers is preferrable as an ideal. But for purposes of Fourth Amendment analysis, the choice among such reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for, limited public resources, including a finite number of police officers.

496 U.S. at 453-54. The Court then concluded that "the balance of the State's interest in preventing drunken driving, the extent to which this system can reasonably be said to advance that interest, and the degree of intrusion upon individual motorists who are briefly stopped, weighs in favor of the state program." *Id*. at 455.

 While the statewide committee's guidance was mentioned by the Supreme Court, it does not appear to have been a deciding factor in the case. For that reason, we hold that *Brouhard* is not persuasive authority, and thus, appellant's argument must fail. Accordingly, we affirm the circuit court's denial of appellant's suppression motion and affirm his conviction and sentence.

Affirmed.